**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DEBRA MARIE BARNES,

              Plaintiff,

vs.                                        Case No. 3:17-cv-00396-J-JRK

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

              Defendant.

_____/

## OPINION AND ORDER[1]

### I. Status

Debra Marie Barnes ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of carpal tunnel syndrome, ankle injury ("broke 3 bones plate and screws"), neck surgery ("bulged, herniated dis[c]s," "plate inserted"), anxiety, "major depression," fibromyalgia, "nerve imping[e]ment in shoulders," "nerve imping[e]ment in elbow", tinnitus, hearing loss, and "neck and back spasms." Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative transcript"), filed June 19, 2017, at 75, 213. Plaintiff filed an application for DIB on May 31, 2013, alleging an

---

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed June 19, 2017; Reference Order (Doc. No. 13), entered June 21, 2017.

onset disability date of October 30, 2011. Tr. at 154.[2] Plaintiff's application was denied initially, see Tr. at 85, 86, 75-84, and was denied upon reconsideration, see Tr. at 100, 101, 87-99.

On June 19, 2015, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 37-74. The ALJ issued a Decision on September 11, 2015, finding Plaintiff not disabled through the date of the Decision. Tr. at 30. The Appeals Council received additional evidence in the form of a brief from Plaintiff's lawyer. Tr. at 4, 5; see Tr. at 273-79 (brief). On February 10, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On April 6, 2017, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following main argument: in assigning "great weight to parts of [treating physician Sunday Ero, M.D.]'s opinion but no weight to the parts of the opinion that would lead to a finding of disability[,] . . . [t]he ALJ failed to articulate good cause for rejecting the parts of the opinion that would have resulted in a finding of disability." Plaintiff's Brief (Doc. No. 17; "Pl.'s Br."), filed September 20, 2017, at 11. Specifically, Plaintiff argues that "[t]he ALJ did not offer valid reasons for discounting Dr. Ero's opinion for the period prior to the date of Dr. Ero's examination of [Plaintiff] in January 2014." Pl.'s Br. at 15. On November 17, 2017, Defendant filed a Memorandum in Support of the Commissioner's

---

[2]     Although actually completed on May 31, 2013, see Tr. at 154, the protective filing date of the application is listed elsewhere in the administrative transcript as May 30, 2013, see, e.g., Tr. at 75, 87.

Decision (Doc. No. 18; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 22-30. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since October 30, 2011, the alleged onset date." Tr. at 22 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: cervical degenerative disc disease, left shoulder AC joint osteoarthritis, left hand carpal tunnel syndrome, and history of left ankle fracture status post open reduction internal fixation." Tr. at 22 (emphasis and

---

[3]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 24 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) except: she can only stand and walk for 2 hours in an 8 hour day and sit for 6 hours with no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; she is limited to occasionally reaching overhead with the left upper extremity and occasionally pushing/pulling with the upper extremities. She cannot climb ladders, ropes, and scaffolds and must avoid concentrated exposure to vibrations and hazards, such as unprotected heights and dangerous machinery.

Tr. at 25 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "capable of performing past relevant work as a claims examiner." Tr. at 30 (emphasis and citation omitted). The ALJ was not required to and did not make alternative findings regarding the fifth and final step of the sequential inquiry. See Tr. at 30. The ALJ concluded that Plaintiff "has not been under a disability . . . from October 30, 2011, through the date of th[e D]decision." Tr. at 30 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a

-4-

preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The undersigned sets out the parties' arguments, the applicable law, and a summary of the relevant medical history. Then, Plaintiff's argument is addressed.

## A. Parties' Arguments

As noted, Plaintiff takes issue with the ALJ's evaluation of Dr. Ero's medical opinion; specifically, Plaintiff states that "[t]he ALJ failed to articulate good cause for rejecting the parts of the opinion that would have resulted in a finding of disability." Pl.'s Br. at 11. Plaintiff asserts that the rationale offered by the ALJ in evaluating Dr. Ero's Physical Residual Functional Capacity Questionnaire ("RFC Questionnaire"), see Tr. 646-50, only takes into account the time period after Plaintiff's January 2014 appointment and is thus not an adequate rationale to discount the medical evidence for the entire period beginning on

October 30, 2011. Pl.'s Br. at 13. Thus, Plaintiff argues, because "[t]he ALJ was required to assess [Plaintiff's] [RFC] for the entire time period in question - from her onset date through the date of decision[,]" and because "[t]he rationale offered by the ALJ pertains to the period after January 2014" and not to the entire period beginning on the alleged onset date of October 30, 2011, the ALJ erred. Id.

Responding, Defendant argues that "[c]ontrary to Plaintiff's argument that the ALJ failed to consider her condition prior to January 2014, the ALJ also properly considered the opinion of Edmund Molis, M.D., a state agency medical consultant who reviewed Plaintiff's medical record through October 2013." Def.'s Mem. at 11. Furthermore, Defendant states that "Dr. Ero's clinical notes do not include objective medical findings or other evidence to support the extreme limitations in his opinion." Id. at 8. Defendant explains that "neither Dr. Ero nor Plaintiff explained how Dr. Ero's unremarkable objective findings and lack [of] treatment history for about one and a half years support his opinion of extreme limitations indicated" and that "Dr. Ero's treatment of Plaintiff was not the kind of treatment one would expect for impairments allegedly of disabling severity." Id. at 9. Defendant concludes that "Dr. Ero's failure to provide an acceptable explanation for his opinion or objective medical evidence to support his opinion is alone a sufficient basis for the ALJ to give little weight to Dr. Ero's opinion." Id.

## B.  Applicable Law[4]

The Regulations establish a "hierarchy" among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[6] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating

---

[4]  On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claim before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[5]  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[6]  A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v.

Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

**C. Summary of the Relevant Medical History**

The administrative transcript indicates that Plaintiff was treated by Allison Butler, M.D., at least as early as June 21, 2011 and as late as August 3, 2012 for, among other things, complaints of chronic pain. See Tr. at 393-427. She was diagnosed, in part, with Chronic Pain

Syndrome, depression with anxiety, Barrett's esophagus, and hypothyroidism. Tr. at 408, 413, 417. Her neurological exams on December 5, 2011 and December 28, 2011 showed that she was alert and oriented and that she possessed full motor strength in both her upper and lower extremities. Tr. at 408 (Dec. 5), 413 (Dec. 28). A third neurological exam on February 6, 2012 showed that she was still alert and oriented but noted a decrease in motor strength. Tr. at 417.

In May 2012, Plaintiff sustained a left ankle fracture, see Tr. at 316, for which she underwent open reduction internal fixation performed by Dr. Ero, who prescribed subsequent physical therapy, Tr. at 324-29. During a follow-up visit on August 31, 2012, Dr. Ero determined that Plaintiff was "progressing well regarding her left ankle" and that she was only experiencing minimal pain. Tr. at 383, 444 (duplicate). However, he noted that Plaintiff had "a new complaint of neck pain and paresthesias with numbness down the left hand and down to the fingers." Tr. at 383. On December 28, 2012, Dr. Ero recommended anterior cervical discectomy and fusion (ACDF) surgery for the neck pain. Tr. at 373.

On January 14, 2013, Plaintiff underwent ACDF surgery. Tr. at 349-51. During a follow-up visit on April 17, 2013, Dr. Ero noted that Plaintiff was doing "quite well" but that she was still experiencing some numbness in her hands. Tr. at 364. He attributed this to "possible carpal tunnel syndrome," prescribed Mobic, and referred Plaintiff for an electromyogram (EMG). Tr. at 364.

On April 25, 2013, Dr. Robert Savarese, D.O., conducted an EMG and found Plaintiff to have moderate left-sided carpal tunnel syndrome and mild left-sided cubital tunnel syndrome. Tr. at 360; see Tr. at 359-62. Furthermore, Dr. Savarese opined that despite Plaintiff's long history of neck pain and history of numbness and tingling in both upper

extremities, Plaintiff had been doing "remarkably well," had almost no neck pain, and was alert and oriented. Tr. at 359.

On May 22, 2013, Plaintiff saw Dr. Ero again for a follow-up examination post ACDF surgery during which Dr. Ero determined that Plaintiff's neck symptoms had "significantly improved." Tr. at 358. He indicated, however, that "[Plaintiff stated] that she [had] been unable to go back to work because she [was] unable to perform clerical duties due to associated symptoms of carpal tunnel syndrome as well as post neck surgery." Tr. at 358.

Plaintiff did not see Dr. Ero again until January 14, 2014. See Tr. at 527-31. On that date, Plaintiff complained of increased neck and left and right shoulder pain that had been "going on for a few months" and had been getting worse. Tr. at 527. Dr. Ero prescribed "symptomatic treatment with Medrol Dosepak followed by Mobic" and discussed with Plaintiff the option of having physical therapy instead of home exercises. Tr. at 530. He noted that Plaintiff preferred to continue the home exercises. Tr. at 530. Additionally, he reported that Plaintiff "[was] to return on a[n] [as needed] basis."[7] Tr. at 530. Plaintiff apparently never returned for a follow-up visit.

The administrative transcript indicates that Plaintiff visited Healing Arts from June 16, 2013 to December 5, 2014 mainly for medication refills, and also complained of chronic neck pain. Tr. at 588-95, 600, 610, 619-26. The treating source records from Healing Arts indicate that she was taking both Cymbalta and Mobic, that Cymbalta was not providing "any significant improvement after having taken it [. . .] for about a year," and that she only took Mobic "occasionally for flares of neck pain." Tr. at 589. One of the treating physicians at

---

[7]    The medical notes state: "The patient is to return on a prn basis." Tr. at 530. The term "prn" is short for the Latin phrase "pro re nata," meaning "as the circumstance arises" or "as needed."

Healing Arts[8] also indicated that it was the treating physician's belief that "chronic pain and anxiety are the primary problems [and that] these wear her down to depression," Tr. at 624.

On June 10, 2015, Dr. Ero completed an RFC Questionnaire. See Tr. at 646-50. In it, he indicated that he treated Plaintiff one to two times per month from May 20, 2012 to May 22, 2013, saw Plaintiff once more on January 14, 2014, and that Plaintiff was experiencing an increase "in neck and arm pain into both shoulders" on that date. Tr. at 646. He opined, among other things, that "during a typical workday, [Plaintiff's] pain or other symptoms [are] severe enough to interfere with attention and concentration needed to perform simple work tasks" on an "[occassional]" basis, that Plaintiff was able to sit for only 2 hours at a time and stand for only 45 minutes at a time, Tr. at 647, and that in an 8-hour working day, Plaintiff could sit for at least 6 hours total, with normal breaks, and stand/walk for about 2 hours total, with normal breaks, Tr. at 648. He further opined that Plaintiff "need[s] a job that permits shifting positions at will from sitting, standing, or walking," Tr. at 648, and that Plaintiff will "sometimes need to take unscheduled breaks during an 8-hour working day," Tr. at 648. On this note, he opined that, on average, Plaintiff's unscheduled breaks would need to last about 10 minutes. Tr. at 648. As to lifting, he opined that Plaintiff could frequently lift and carry objects of 10 pounds or less, occasionally lift and carry objects of 20 pounds, and never lift and carry objects weighing 50 pounds. Tr. at 648. Finally, he opined that Plaintiff is "likely to be absent from work as a result of the impairments or treatment . . . [a]bout two days per month." Tr. at 649. He indicated that the symptoms and limitations referenced in the RFC Questionnaire had applied since October 30, 2011, the alleged onset date. Tr. at 650.

---

[8]     The medical records from Healing Arts do not provide the treating physicians' full names; rather, they provide only the treating physicians' and other sources' initials. In this case, the treating physician's initials provided are "DAB, MD . . . ."

**D. ALJ's Evaluation of Plaintiff's Claims and of the Medical Evidence**

As noted, Plaintiff claims that the rationale the ALJ used in evaluating Dr. Ero's RFC Questionnaire pertains only to the period after January 2014 and that the ALJ erred by offering a rationale that failed to take into account the period prior to January 2014. Pl.'s Br. at 13.

Although the ALJ's decision to discount parts of Dr. Ero's opinion rests in part on the lack of heightened treatment after January 2014, illustrated by Dr. Ero's and Plaintiff's decision to continue with conservative treatment, see Tr. at 530, it does not necessarily follow that the ALJ failed to take into account the time period before January 2014. The ALJ reasoned that Dr. Ero's and Plaintiff's decision to continue with conservative methods of treatment indicates that whatever impairments and limitations Plaintiff had been experiencing until that point did not reach a level of severity that rendered those impairments and limitations disabling. See Tr. at 28. Thus, the ALJ's reasoning does indeed take into account the entire time period beginning on the alleged onset date. Moreover, the lack of heightened treatment was not the only factor taken into account by the ALJ. The ALJ also took into account many of Dr. Ero's other medical opinions dating back to 2012. Tr. at 27-28; see Tr. at 383, 444 (noting that Plaintiff was "progressing well [post open reduction internal fixation] regarding her left ankle" and that she was only experiencing minimal pain); Tr. at 364 (noting that Plaintiff was doing "quite well" post ACDF surgery but that she was still experiencing some numbness in her hands); Tr. at 358 (noting that Plaintiff's neck symptoms had significantly improved); Tr. at 527 (noting complaints of increased neck pain that had been increasingly getting worse); Tr. at 530 (noting that he discussed with Plaintiff the option of

having physical therapy instead of home exercises and Plaintiff preferred to continue the home exercises; that Plaintiff "[was] to return on an [as needed] basis").

Furthermore, the ALJ's decision to discount certain parts of Dr. Ero's opinion is supported by the medical opinions of other physicians in the record, including Dr. Butler, Tr. at 408, 413 (noting normal neurological findings, full strength in Plaintiff's upper and lower extremities, and that Plaintiff was alert and oriented), the various treating physicians and other treating sources at Healing Arts, Tr. at 589 (noting that Plaintiff was taking both Cymbalta and Mobic, that Cymbalta was not providing "any significant improvement after having taken it [. . .] for about a year," and that Plaintiff only took Mobic "occasionally for flares of neck pain"),[9] Tr. at 624 ("[the treating physician believes Plaintiff's] chronic pain and anxiety are the primary problems [and that] these wear her down to depression"),[10] and Dr. Molis, Tr. at 87-99 (opining that Plaintiff can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds; can stand and/or walk, with normal breaks, for a total of about 6 hours in an 8-hour workday; can sit, with normal breaks, for a total of about 6 hours in an 8-hour workday; that she is alert and oriented; and that while "the evidence shows that the individual has some limitations in the performance of certain work activities[,] . . . these limitations would not prevent [Plaintiff] from performing past relevant work as [a] Claims Analyst"). Therefore, the ALJ's decision to discount the parts of the report that would have resulted in a finding of disability, namely the parts pertaining to limited concentration, the need to alternate position, the need for unscheduled breaks, and absenteeism, is supported by substantial evidence.

---

[9] The treating source's initials for these treatment notes are provided as: "GPJ, PA-C . . . ."

[10] The treating physician's initials for these treatments notes are provided as: "DAB, MD . . . ."

In sum, the rationale of the ALJ in evaluating Dr. Ero's RFC Questionnaire did not fail to take into account the entire time period beginning on October 30, 2011, nor did the ALJ fail to articulate good cause for rejecting the parts of Dr. Ero's report that would have resulted in a finding of disability. Therefore, the ALJ did not err in his Decision.

## V. Conclusion

After a thorough review of the entire record, the Court finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2.     The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on July 11, 2018.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

jec
Copies to:
Counsel of record